The case for this morning is United States v. Scott. Mr. McQuaid. Your Honor, may it please the Court, Counsel. Your Honor, we are here today because the defendant in this case, Wayne Scott, asks this Court to remand his sentencing for a new sentencing hearing before the District Court. Because the District Court in this case did not give him a proper and fair hearing after committing him on his violation of mandatory supervised release to one day time served and another three years of supervised release. And the argument, Your Honor, is that not only was there procedural errors, but in the end this was an altogether breakdown of the sentencing process that we avail ourselves in the District Court in a criminal case. The facts of the case were that Mr. Scott was found in violation by the judge for opening a line of credit, buying a car. And that was a couple of years after some earlier violations had been noted and then just put in the back burner or something. No one ever did anything with those. Yes, Your Honor, that's correct. I believe there were several, possibly five other violations that were put aside in the context of this particular hearing in which it was two days of the hearing and then immediately the Court goes into the sentencing process. So the Court never calculates the advisory range under Chapter 7 for revocations of supervised release. That's correct. There's no acknowledgment and then established. And there's no background document either that shows that range unless you go all the way back to the different violations in 2015? I would agree with the Court. Nothing was referred to specifically or presented to the District Court at the time of sentencing. I believe there was a prior probation violation with a recommendation. I believe the government's correct. It was five to 11 months incarceration and another three years of MSR was the range that was set by probation. But it was a different underlying offense? I believe so, Your Honor. I think there's only one time that he tries to open a line of credit and that's the 2017 violation that we're here for. Yeah, it was a 2014, actually the events took place in 2014. I think the car was abandoned in 2016 and the violation was I understand that. I'm saying the 2015 violations, which I think you have to go back to to get any calculation or failure to make restitution payments, failure to notify about a change in residence, failure to notify about an arrest and things of that sort. Quite different. Yes. Ultimately after once this process, this sentencing process began it was basically a colloquy ultimately between the parties, ultimately then Mr. Scott and the judge in regards to certain I would call them accusations that he had not been complying with the supervised release in other areas, not just this particular violation. The court started to blend in a concept that he did not want to send Mr. Scott to jail because he wanted him to pay the restitution. Ultimately then there was no, we didn't begin with an established guideline range. We did not get into aggravation offered by the government, an opportunity for mitigation from the defendant's point of view. We just had this back and forth, which we can decipher. And you're saying no 32.1 allocution? At the end, Your Honor, there was none. There was no offer. We could piece together this broken egg at some point and try to get a whole egg, but you don't have it. His lawyer, not you, basically tries to shut him up, right? He says, I want to add for the record and the lawyer says no. And I think that the government makes a point of waiver or waiving issues. And although I don't believe that the right to elocution has the same constitutional gravity as the right to remain silent where the lawyer can't, I can't get up there on behalf of my client and say he's not going to testify unless he's admonished by the court and he understands that's his right. I think elocution rubs close to that, that there is an opportunity for him to say what he needs to say on his own behalf, even if he disagrees with how counsel may be handling the sentencing hearing, which in this case, counsel was a bystander. He blurts out in the middle of the hearing when the court says I'm not inclined or something to the effect of I'm not inclined to send him back to jail, we will agree to a continuous supervised release, which I don't believe Mr. Scott was ever asked if that was okay with him. And obviously it's not because we're here appealing this sentencing hearing before this court. Ultimately, your honors, as I said, nothing was offered from Mr. Scott's point of view in mitigation. He did, his counsel did not take care of the opportunities that the court should have been offering and a sentencing hearing as your decisions in this court and as the northern district judges have established this process of sentencing that we have, it's very organized, it's very controlled, and it's a very significant way to practice. And it's very valuable that these things are done the way they're supposed to be done, and that wasn't done in this case. Well, revocation is different than a plenary sentencing. It is. And subject to different standards. I agree, I agree, and I think that it wouldn't be subject to another pre-sentence report, wouldn't be on behalf of the defendant, wouldn't be required. There are certain, I would say, it's not as strict or significant. Right, it's a more summary proceeding. But again. The judge is And I don't disagree with that, and I see that. And your client's counsel basically, as his agent, gave up any allocution right for him. And under the, I'm sure that the court sees under the circumstances after reading the hearing, understands that when someone says, I'm not sentencing you to jail, sometimes the lawyer thinks that's a very good thing. Most of us do. I wouldn't say that's out of the ordinary. Right, but having given that issue up, that's a waiver. Likewise, the 36 months of supervised release calculation under the guidelines, there's no contention that that's inaccurate. No, not at all. It is inaccurate though, at least to the point of the day. It is. Because it's too long. Yes. So I would say that even under a, I want to call it a lesser standard, but lesser scrutiny in a motion to revoke sentencing after a revocation's been made. I still, the process still has to be available to the defendant to allow himself to present his case in mitigation, to ask for a lesser sentence than three years. And don't we, we have insisted that the court at least signal, we've had a couple of cases from the Central District of Illinois recently, that the court needs to signal awareness of what the policy statements suggest for punishment, I'll say broadly, whether it's incarceration time or further supervised release time after a violation that causes revocation. And I agree with that. The judge isn't supposed to just pull a number out of the hat. And I'm not, I agree. I agree. And I think because of this particular hearing, if you would call it that, and the way it went. Oh, one year, three years. No protections were in place. And the process broke down and Mr. Scott's rights to a fair sentencing hearing, not a perfect sentencing hearing, but any kind of a sentence hearing, it didn't happen here. And that's the argument. And we're asking this court to remand the case for a new sentence. The lawyer also gave up any, affirmatively gave up any challenge to the 36 months of supervised release. I can't disagree with that. But again, I think... So the remedy is not a direct appeal. Right. If there's any harm here. Well, unless it's a forfeiture and not a waiver. But I don't think... It was certainly wrong. I don't think the lawyer can forfeit. He never had an opportunity, Mr. Scott never had an opportunity to put forth anything on his behalf, either through his lawyer or through his own right to elocution. He was given that opportunity and his attorney thanked the court for the opportunity and said, I don't believe the defendant has anything else he wants to tell the court. And then when there was a change of attorneys, a couple months later, the new attorney said, we're not going to challenge anything that happened before. Well, that was me. And the first time I stepped up was the resentencing, basically giving him the one day time served. At that time, there was no transcript. We had no idea that this process had gone on the way it did. There was a motion to reconsider done later after review, which those things were challenged and offered. Right. But there was no attempt to reopen the sentencing hearing and have a do-over. That's correct. Once you got into the case. That's correct. Going back to your original point, Your Honor, the fact that counsel... I don't believe that the judge offered him an opportunity to elocute. I believe Mr. Scott wanted to say something. His lawyer jumped in the way and then he shut him up. And then Mr. Scott didn't say anything. I don't believe that it was presented to him. But you have this opportunity now to say something in your own behalf. You can avail it or choose not to. That's the proper way to do it, and it wasn't done in this case. All right. Thank you very much. Ms. Salovara. Good morning. May it please the Court, Defense Counsel. Your Honor, their opening brief by the defendant raised two procedural error arguments. Respectfully, there was no procedural error by the district court. I don't see it this way at all. I think this is a terrible example of sentencing on revocation. First of all, it confuses the underlying reason for the revocation, because taking out a line of credit isn't the same thing as failure to make restitution payments and failure to notify the probation officer. There's never any calculation of the policy statements. There's carelessness about the length of supervised release, leading to this at least one-day mistake that's made. There is a failure to observe Rule 32.1B, which explicitly says that the court has to give the person an opportunity. And this is, of course, revocation of supervised release. This is not original sentencing. An opportunity to make a statement and present any information mitigation. None of that. So I consider the whole thing really off the rails. Let me address each of those concerns in turn, Your Honor. With respect to the advisory sentencing guidelines, and you raised this a moment ago, there was a background report that set forth... When was it prepared and where is it in the record? It was prepared in 2014. It's in the record. And what underlying offense does it pertain to? Judge, it pertains to different offenses. Exactly. And they have different... Some offenses are grade B, some are grade C, some are grade A, maybe if it's luckily the same grade. But how can you have specific sentencing when you don't even know what the offense is? Judge, at the sentencing, the government, myself, specifically referred to the report. The earlier report in the guideline calculation... The vague, you know, three years ago on a different topic report. Well, Judge, but what is said to the court without objection or correction by defense counsel was the correct recitation. I'm referring to the government's appendix at 7 with respect to what the initial report said. Bottom of page 6, I start. This case originally began with supervised release request from the probation officer and a predecessor... I understand. That's your recommendation of a sentence. That is not what I'm used to seeing. You know, some of these things from Judge Darrow we've had recently. It doesn't say the policy statements recommend A to B. And we are saying, you know, you do say we'd like custody of 5 months and then a new term of supervised release of 36 months. That's a mistake, too, since it would have to be the 36 minus 5. It would be 31 months. But it's... Your Honor... Nothing that is required happens. Judge, again, the report is there with the advisory sentencing guideline. What's the advisory range? The advisory range... You didn't put this any place in your brief. Judge, the advisory range was 5 to 11 months and... 5 to 11 months of custody and 36 months of... Up to 36 months... Up to, right. So subject to what's gone on before. Correct. Because there are limitations on how much more supervised release can be imposed if there's a term of incarceration. And here it could be up to 36 months of supervised... An additional 36 months of supervised release. And that's what it said in the initial report. It's what the government said referencing the fact that the violation was different. It still was a guideline C offense. And we say that the government made that clear at the sentencing hearing. The defendant, defense counsel, knew that report, did not object, did not disagree. It was correct, Your Honor. I'm not sure it was, and I'm also very concerned that the judge is just floating around between a year more of supervised release, three years more of supervised release. The lawyer is shutting his defendant off, his client off, his client's trying to say something. The lawyer's interrupting. The judge seems to let that happen. Again, if I... It's terrible. If I may address that. We moved after a revocation hearing with witnesses to the sentencing phase. The judge proceeded to engage in a colloquy. Not unlike the colloquy this court approved of in the case United States v. Deberry. I don't think it's a colloquy. If what you're getting to is that this was the functional equivalent of allocution, I completely disagree with you. The judge is certainly asking him questions to get in the judge's mind clear what went on. But the judge is not giving him the opportunity to say anything he might wish to say. There's no open-ended, what would you like to say in your own behalf? Nothing. With respect to the allocution issue, we have two here, advisory sentencing guidelines and allocution. As we said in our brief, the situation here involved the defendant providing a discourse like the court heard in the Deberry case. And I don't read it that way. I guess that's the problem. You can stand there and tell me that's what it is. But it looked like a Q&A to me. Not at all like an opportunity to present whatever mitigating facts he may have. And then Mr. Weigel tells him not to talk, obviously. Judge, I think what occurred, let me back up. Was the defendant afforded a right to allocute? No. The government does not? No. He was not. But the case law, Deberry and the Petrie decision, make clear with respect to the right of allocution that the standard of review is plain error. And those decisions focus on the third factor. Are we confident that the proceeding was fair, had substantial integrity? And in this case, I submit you can reach that same result. But you would agree, though, that the revocation of supervised release rule 32.1 calls for allocution. It's a rule-based right. I'm not saying it comes from some grand source. I agree, Your Honor. And that he was not given that, so we agree with that. And so now we're left with, you know, what kind of a proceeding did we have? Is it one in which we can have confidence? And I don't see any equivalent of that right. Judge, again, the discourse... Indeed, he's told to shut up when he tries to begin to exercise that. I think, Your Honor, with respect to that, that the defense attorney thought perhaps correctly that what the defendant might want to offer at this point would not be advantageous to the client's position. That may be, but the Supreme Court's been very clear that people have a personal right to allocute, and it's not up to the lawyer to say, actually, you're just going to hurt yourself. The lawyer may have thought that. I thought that, too. And the lawyer may have been right, for all I know. But it's not pertinent. Well, it's correct, again, Your Honor, that he was not afforded the right to allocute. But what is in the record is a sufficient colloquy, discourse, exchange of information relating to the 3553A factors, relating to the information that the court needed to consider. So there's really no right to allocute, in your view, as long as the judge goes through the 3583, I'll say, factors, then it doesn't make any difference. No, Judge, there is a right to allocute. But it's unenforceable, though, in your view. No, in my view, the court's right is to make a decision based on the fact that the court is looking at the preceding. Do we have a sense of fairness, integrity, substantial justice? And on this record, you can have that confidence, Your Honor, that the court engaged in a discourse with the defendant that included information about his employment, his financial resources, both to support a minor child, his ability to make restitution, his history of making restitution, the fact that he made restitution in some amounts, $25 only for a period of time. All of that information was in front of the court. And the court considered it, said several times that the focus in the court's determination about an appropriate sentence was the ability of the defendant to continue to make restitution. Did the defendant take advantage of his right to allocute in the original proceedings? In the original proceedings, he did. So he was not aware of the right to allocute. I would believe he was aware of the right to allocute, Your Honor. And again, recall, as Judge Wood has pointed out... And he tries, Your Honor. I just want to add for the record, Mr. Weigel, no, you're going to talk to me first. The defendant, okay. And then Mr. Weigel, I don't believe he has anything else he wants to tell the court. We don't hear from the defendant at that point. Then the court just says, stay out of trouble, and he says yes. Well, Judge, I believe it shows in the record the defense counsel and defendant conferred at that point. And then defense counsel said, I don't believe he has anything else to add, as you've just read. And that was the end of it. He had previously explained, not again with respect to right of allocution, but as it relates to the advisory sentencing guidelines and the appropriateness of the sentence that the court imposed, he had provided information to the court regarding, again, employment, financial resources... But we don't know what else he might have wanted to say in mitigation. You're assuming that these forward-looking factors were the sum total. Judge, he asserts now in his reply brief that there are additional things he would have offered in mitigation. He doesn't tell us what those are, and he had an opportunity. Judge, this was a protracted proceeding, as you can tell. He had numerous opportunities, both before the advisory sentencing recommendation. He had an opportunity. He had grants. Well, that's where I'm bothered by the record. You say he has all these opportunities from this out-of-date different offense record. He's supposed to intuit that the government isn't tailoring its recommendations to the reason for the revocation of supervised release? The government's not. The government never files anything related to this. Judge, the government filed a motion setting forth this new ground in support of revocation of supervised release, and that's what the hearing was about. Right, because you never sought to revoke it based on the violations that had led to your earlier report. We did not proceed to a hearing on those issues, correct. But at the time we filed the motion to revoke with respect to the opening of the additional line of credit in January, we then had almost a six-month pause, five-month pause, before we started the hearing on June 1 and continued it until July 6. And during all of that time period, the defendant never raised any question about his understanding of the advisory guideline that applied, his understanding of the recommendation, and at the time of the sentencing, the government made explicit that we were adopting that recommendation that had applied to the same guideline offense level C. Again, it was a violation of supervised release. It wasn't A, it was the defendant, defense counsel, or the court. The government represented what it was, the government represented it accurately, the court understood what it was, and the court imposed a sentence below the advisory guideline range. We advised the court that the low end of the range was five months of custody and up to 36 months of supervised release. The court listened to the parties' arguments regarding that. Okay, I think I have your point, sure. And with respect to the allocution again, Your Honor, I submit that the record is sufficient for the court to be comfortable in the integrity of the proceeding. Okay. And accordingly, we request the court affirm the judgment of the disreport. All right, thank you very much. Thank you. Anything further, Mr. McQuaid? No, Your Honor. All right, so the case will be taken under advisory.